UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

KEVIN ALEXANDER QUINONEZ
TORRES,

                    Petitioner,

        v.

LAURA HERMOSILLO, et al.,

                    Respondent.

Case No. 2:26-cv-00076-TLF

ORDER GRANTING PETITION
FOR WRIT OF HABEAS CORPUS
IN PART

Petitioner Kevin Alexander Quinonez Torres has filed a petition for writ of habeas corpus under 28 U.S.C. § 2241 seeking release from custody. Dkt. 1. Petitioner is detained by United States ("U.S.") Immigration and Customs Enforcement ("ICE") at the Northwest ICE Processing Center ("NWIPC") in Tacoma, Washington. *Id.* Petitioner asserts claims for (1) violation of the Immigration and Nationality Act in applying 8 U.S.C. § 1225(b)(2), which mandates continued detention, to petitioner; (2) violation of petitioner's Fifth Amendment right to Due Process in re-detaining him without providing written notice and a meaningful opportunity to be heard by a neutral decisionmaker.

Petitioner seeks an order: (1) declaring petitioner is detained under 8 U.S.C. § 1226(a) and not subject to mandatory detention under § 1225(b); (2) declaring petitioner's re-detention without any basis to revoke his deferred action and without a pre-deprivation hearing violates the Due Process Clause of the Fifth Amendment; (3) ordering respondents to immediately release petitioner from custody, or in the

ORDER GRANTING PETITION FOR WRIT OF
HABEAS CORPUS IN PART - 1

alternative, ordering his immediate release upon payment of the alternative bond set by the Immigration Judge ("IJ"); (4) enjoining respondents from re-detaining petitioner absent written notice and a pre-deprivation hearing at which DHS must justify any re-detention by clear and convincing evidence of flight risk or danger to the community and demonstrate that no alternatives to detention would mitigate any such risks; (5) directing that upon petitioner's release, respondents must return to petitioner any personal property, including personal identification documents and employment authorization documents.

The Government has filed a return memorandum. Dkt. 7. Petitioner has filed a response/traverse. Dkt. 10.

The Court, having considered the parties' submissions and the governing law, GRANTS petitioner's federal habeas corpus petition IN PART as provided below.

## I.     BACKGROUND

Petitioner is a native and citizen of Guatemala, who entered the United States on August 23, 2019, when he was 15 years old, without inspection. Dkt. 9 (Declaration of Christopher Hubbard ("Hubbard Decl.") at 2; Dkt. 8 (Declaration of Katherine G. Collins ("Collins Decl.") at Ex. A (Record of Deportable/Inadmissible Alien), Ex. B (Warrant of Arrest). Petitioner was apprehended by United States Border Patrol at or near the border that same day. *Id.*

A day later, on August 24, 2019, DHS issued petitioner a Notice to Appear ("NTA") charging him with being removable from the United States under Section 212(a)(6)(A)(i) (codified at 8 U.S.C. § 1182(a)(6)(A)(i))of the Immigration and Nationality Act ("INA"), for having entered the United States without being admitted or paroled. Dk.

ORDER GRANTING PETITION FOR WRIT OF
HABEAS CORPUS IN PART - 2

8 (Collins Decl.), Exh. C, (2019 NTA); Dkt. 9 (Hubbard Decl.) at 2. Petitioner was processed as an unaccompanied minor and on September 27, 2019, was released from government custody on his own recognizance, to his brother. Dkt. 8 (Collins Decl.) Exh. D (ORR release); Dkt. 9 (Hubbard Decl.) at 2.

After release, petitioner attended his first immigration hearing pro se on March 15, 2022, in Boston, Massachusetts. Dkt. 9 (Hubbard Decl.) at 2. Petitioner later applied, through counsel, for Special Immigrant Juvenile Status ("SIJS")[1] with United States Citizenship and Immigration Services ("USCIS") and was granted SIJS on September 6, 2023. Dkt. 8 (Collins Decl.) Ex. E (SIJS Approval); Dkt. 9 (Hubbard Decl.) at 3.

No visas were available and USCIS placed petitioner in deferred action for a period of four years. *Id.* As of January 23, 2026, the parties agree petitioner remained in deferred action status. *Id.*

Petitioner, through counsel, filed a motion to terminate with the Immigration Court, and on November 12, 2024, the Immigration Judge terminated petitioner's removal proceedings without prejudice on the grounds that petitioner was "eligible to

---

[1] "The SIJS classification provides immigration relief for foreign-born children living in the United States who have been abused, neglected, abandoned, or similarly mistreated by a parent and for whom a state or administrative court has determined it would not be in their best interest to be returned to their home country or prior country of residence." *A.C.R. v. Noem*, No. 25-CV-3962 (EK)(TAM), 2025 WL 3228840, at *1 (E.D.N.Y. Nov. 19, 2025), *reconsideration denied*, No. 25-CV-3962 (EK)(TAM), 2026 WL 102611 (E.D.N.Y. Jan. 14, 2026) (internal quotation marks and citation omitted); 8 U.S.C. § 1101(a)(27)(J). "The Immigration and Nationality Act (as subsequently amended) renders SIJS recipients eligible for lawful permanent resident status." *Id.* (citing 8 U.S.C. § 1153(b)(4). But they can only apply for adjustment of status if an immigrant visa is "immediately available" at the time of filing. *Id.* (citing 8 U.S.C. § 1255(a)). If no visa is available when a person receives SIJS approval, the person cannot yet apply for adjustment of status. *Id.* Because of a backlog of visas, in 2022 the USCIS announced a deferred-action program for individuals with SIJS. *Id.* Deferred action is "an act of administrative convenience to the government that gives some cases lower priority." *Id.* (citing 8 C.F.R. § 274a.12(c)(14); *see also* 8 C.F.R. § 236.21(c)(1)).

ORDER GRANTING PETITION FOR WRIT OF
HABEAS CORPUS IN PART - 3

pursue relief before the [USCIS]." Dkt. 8 (Collins Decl.) at Ex. F (IJ Order); Dkt. 9 (Hubbard Decl.) at 3. Petitioner was arraigned in Framingham District Court in Framingham, Massachusetts for the offense of assault and battery on a family or household member. Dkt. 8 (Collins Decl.) at Exh. G (2025 I-213); Dkt. 9 (Hubbard Decl.) at 3. These charges are still pending. *Id.*

Respondents assert that because petitioner incurred a new criminal charge, on March 4, 2025, ICE located and arrested petitioner based on a new arrest warrant. Dkt. 8 (Collins Decl.) at Ex. G (Record of Deportable/Inadmissible Alien, 2025 Form I-213), Ex. H (warrant). The record includes a "warrant for arrest of alien" issued by immigration officer "Hamel" and dated March 4, 2025. Dkt. 8 (Collins Decl.) at Ex. H (warrant). The warrant states that there "is probable cause to believe that petitioner was removable from the United States." *Id.*

The record reflects petitioner was stopped as he was driving away from a court appearance in his criminal case. Dkt. 8 (Collins Decl.) at Ex. G (Record of Deportable/Inadmissible Alien, 2025 Form I-213). That same day, ERO served petitioner with a new NTA, charging petitioner with removability under INA § 212(a)(6)(A)(i) (codified at 8 U.S.C. § 1182(a)(6)(A)(i)), on the grounds that he entered the United States without being admitted or paroled. Dkt. 8 (Collins Decl.) at Exh. I (2025 NTA); Dkt. 9 (Hubbard Decl.) at 3.

Petitioner was held at the Wyatt Detention Center in Boston, Massachusetts until March 14, 2025. Dkt. 9 (Hubbard Decl.) at 3. Petitioner was then transferred to Florence Service Processing Center in Florence, Arizona until March 23, 2025. *Id.* Petitioner was then transferred to the NWIPC on March 24, 2025. *Id.* Petitioner had a bond hearing,

ORDER GRANTING PETITION FOR WRIT OF
HABEAS CORPUS IN PART - 4

represented by counsel, at the NWIPC on April 1, 2025. *Id.* Petitioner's counsel withdrew the bond request the same day. *Id.*

Petitioner's counsel filed a motion to terminate on May 5, 2025, with EOIR Tacoma, Washington. *Id.* The IJ denied this motion to terminate on May 7, 2025, and determined petitioner was properly in removal proceedings. *Id.*

Petitioner had three master calendar hearings on May 7, 2025, May 19, 2025, and May 28, 2025. At each hearing petitioner was represented by counsel.

Petitioner, through counsel filed applications for asylum and for withholding of removal on May 19, 2025, and May 28, 2025.

On July 9, 2025, petitioner appeared before the Immigration Judge for a bond hearing. Dkt. 8 (Collins Decl.) at Exh. J (Bond Order). The Immigration Judge denied petitioner's bond for lack of jurisdiction, based on his mandatory detention under INA § 235(b). *Id.* In the alternative, the IJ found petitioner could be released from custody on a $4,000 bond. *Id.* Petitioner appealed this decision to the Board of Immigration Appeals ("BIA") and it remains pending. Dkt. 9 (Hubbard Decl.) at 4. On July 11, 2025, the Immigration Judge denied petitioner all forms of relief and ordered petitioner removed; petitioner appealed this decision to the BIA and the appeal remains pending. Dkt. 9 (Hubbard Decl.) at 4.

## II.    DISCUSSION

Federal courts have authority to grant writs of habeas corpus to an individual in custody if such custody is a "violation of the Constitution or laws or treaties of the United States[.]" 28 U.S.C. § 2241(c)(3).

ORDER GRANTING PETITION FOR WRIT OF
HABEAS CORPUS IN PART - 5

Petitioner argues that individuals apprehended on arrival in the United States, released, and later apprehended again are subject to discretionary detention under § 1226(a), and thus entitled to consideration for release on bond. Respondents argue that all noncitizens present in the United States without admission are subject to mandatory detention under § 1225(b)(2).

Section 1225 applies to noncitizens who are "applicants for admission." An applicant for admission is a noncitizen "who 'arrives in the United States,' or 'is present' in this country but 'has not been admitted.' " *Jennings*, 583 U.S. at 287 (quoting 8 U.S.C. § 1225(a)(1)). All applicants for admission "shall be inspected by immigration officers" to assess whether they may be admitted. 8 U.S.C. § 1225(a)(3). "[I]f the examining immigration officer determines that [a noncitizen] seeking admission is not clearly and beyond a doubt entitled to be admitted, the [noncitizen] shall be detained." § 1225(b)(2)(A). Other than for a limited exception under 8 U.S.C. § 1182(d)(5)(A) for parole "for urgent humanitarian reasons or significant public benefit," which is not implicated here, detention under § 1225(b)(2) is mandatory. *Sequen v. Albarran*, —— F. Supp. 3d ——, 2025 WL 2935630, at *1 (N.D. Cal. Oct. 15, 2025) ("noncitizens subject to 1225(b)(2) ... are subject to mandatory detention while their full removal proceedings are pending").

Section 1226 applies to noncitizens who are "detained pending a decision on whether the [noncitizen] is to be removed from the United States." Section 1226 affords the government significant discretion; as long as the detained noncitizen does not meet the requirements for detention under § 1226(c), the Attorney General may release the noncitizen on "bond" or "conditional parole." 8 U.S.C. § 1226(a)(1)–(2). Release is

ORDER GRANTING PETITION FOR WRIT OF
HABEAS CORPUS IN PART - 6

proper where the noncitizen "satisfies [the government] that he will not pose a danger to the safety of other persons or of property and is likely to appear for any scheduled proceeding." § 1226(a)(4). If a noncitizen wishes to contest the initial custody determination — the denial or amount of bond, they have a right to do so under the statute before an immigration judge. 8 C.F.R. § 1236.1(d)(1); *see Rodriguez v. LaRose*, No. 3:25-CV-02940-RBM-JLB, 2025 WL 3456475, at *4 (S.D. Cal. Dec. 2, 2025) (differentiating between mandatory detention under § 1225 and discretionary detention under § 1226).

Petitioner cites the decisions in *Rodriguez Vazquez v. Bostock*, 802 F. Supp. 3d 1297 (W.D. Wash. 2025), and *Del Valle Castillo v. Wamsley*, No. 2:25-CV-02054-TMC, 2025 WL 3524932, at *5 (W.D. Wash. Nov. 26, 2025), and argues that he is detained under § 1226(a), not § 1225(b). In *Rodriguez Vasquez*, the Court granted summary judgment to members of a certified Bond Denial Class, holding that their detention under § 1225(b)(2) was unlawful under the INA. 802 F. Supp. 3d 1297. The Court defined the Bond Denial Class to include:

> All noncitizens without lawful status detained at [NWIPC] who (1) have entered or will enter the United States without inspection, (2) are not apprehended upon arrival, (3) are not or will not be subject to detention under 8 U.S.C. § 1226(c), § 1225(b)(1), or § 1231 at the time the noncitizen is scheduled for or requests a bond hearing.

*Id.* at 1309.

The Court reasoned noncitizens who entered the United States without inspection but have been "residing in the United States" and were "not apprehended upon arrival" are governed by § 1226. *Id.* As the Court noted, § 1225(b)(2) requires that the noncitizen be "seeking admission," language that "necessarily implies some sort of present-tense action" which was not applicable to the circumstances of the individuals in

ORDER GRANTING PETITION FOR WRIT OF
HABEAS CORPUS IN PART - 7

the Bond Denial Class. *Id.* at 1329 (citing *Al Otro Lado v. Wolf*, 952 F.3d 999, 1011 (9th Cir. 2020) (finding that the phrase "*arriving* in the United States" and its "use of the present progressive, like use of the present participle ... denotes an ongoing process") (emphasis in original), *cert. granted* No. 25-5, 2025 WL 3198572, at *1 (U.S. Nov. 17, 2025)).

The Court in *Rodriguez Vazquez* further reasoned that a "plain reading" of 28 U.S.C. § 1226(c) which "'carves out a statutory category of aliens who may *not* be released under § 1226(a)[]' *Jennings*, 583 U.S. at 289 (emphasis in original)", "implies that the default discretionary bond procedures in section 1226(a) apply to noncitizens who, like Bond Denial Class members, are 'present in the United States without being admitted or paroled' under section 1182(a)(6)(A) but *have not been* implicated in any crimes as set forth in section 1226(c)." *Id.* at 1323, 1330 (citing § 1226(a) (Attorney General may release noncitizen on bond "except as provided in subsection (c)"). The Court added that the Supreme Court in *Jennings* distinguished between § 1225(b) and § 1226 as follows: " 'In sum, U.S. immigration  law authorizes the Government to detain certain aliens *seeking* admission into the country under §§ 1225(b)(1) and (b)(2). It also authorizes the Government to detain certain aliens *already in the country* pending the outcome of removal proceedings under  §§ 1226(a) and (c).' " *Id.* at 1330-31 (quoting *Jennings*, 583 U.S. at 289) (emphasis added). Accordingly, the Court concluded that the detention of the Bond Denial Class members was governed by § 1226.

In *Del Valle Castillo*, the Court found that the several petitioners, who had been apprehended on arrival, released, and later apprehended again, were also subject to discretionary detention under § 1226(a). *Del Valle Castro*, 2025 WL 3524932, at *5. The

ORDER GRANTING PETITION FOR WRIT OF
HABEAS CORPUS IN PART - 8

Court noted that courts across the country have uniformly determined that detainees similarly situated to the petitioners in *Del Valle Castillo* were detained under § 1226(a). *Id.* The Court added that in making the determination as to which statute applied, the government's treatment of the petitioner seeking habeas relief was "particularly relevant" and where a petitioner has been "'treated by Respondents as subject to detention under § 1226, rather than mandatory detention under § 1225,' the former is more likely to apply." *Id.* (quoting *Romero v. Hyde*, No. CV 25-11631-BEM, 2025 WL 2403827, at *8 (D. Mass. Aug. 19, 2025).

One petitioner in *Del Valle Castillo*, had entered the United States in 2018 as an unaccompanied juvenile, was transferred to ORR custody, and was released to live with his uncle. *Id.* at *3, *7. In 2021, he was granted SIJ status and deferred action, and the removal proceedings against him were terminated. *Id.* Petitioner then resided in the United States for nearly seven years between his initial release and his most recent apprehension. *Id.* The Court concluded because of petitioner's initial release from custody, his SIJ status, and the termination of his initial removal proceedings, the circumstances demonstrate he was subject to discretionary detention under § 1226(a) and entitled to a bond hearing. *Id.*

Here, petitioner's circumstances are similar to those in *Del Valle Castillo*. *Id.* The Court concludes that, as in *Del Valle Castillo*, because of petitioner's initial release from custody, his SIJ status, and the termination of his initial removal proceedings, the circumstances demonstrate he is subject to discretionary detention under § 1226(a) and entitled to a bond hearing.

ORDER GRANTING PETITION FOR WRIT OF
HABEAS CORPUS IN PART - 9

First, with respect to petitioner's initial release from custody, the Court notes that persons detained under § 1225 may only be released under the agency's parole authority for "urgent humanitarian reasons or significant public benefit." 8 U.S.C. § 1182(d)(5)(A). But here nothing suggests petitioner was released on humanitarian parole under § 1182(d)(5)(A). Rather, the record reflects that petitioner was transferred to ORR custody and released to live with his brother. *Del Valle Castillo*, 2025 WL 3524932, at *6; *Martinez v. Hyde*, No. CV 25-11909-BEM, 2025 WL 3152847, at *7 (D. Mass. Nov. 12, 2025) (concluding that petitioner who was transferred to ORR custody and released to live with his father was not "parole[d] ... into the United States").

Second, petitioner was granted SIJ status and deferred action, a designation that "confers removal protections to certain young noncitizens" and weighs in favor of finding petitioner is not detained under § 1225(b)(2). *Del Valle Castillo*, 2025 WL 3524932, at *6 (citing 8 U.S.C. §§ 1101(a)(27)(J), 1227(c); *Murillo-Chavez v. Bondi*, 128 F.4th 1076, 1085 (9th Cir. 2025) ("SIJ status is a form of parole that confers eligibility for adjustment to [lawful permanent resident] status to noncitizen minors who have been abused, abandoned, or neglected.")); *Martinez*, No. CV 25-11909-BEM, 2025 WL 3152847, at *8 n.33 ("Petitioner's SIJ status appears to be incompatible, whether by direct operation of statute or simply as indicative of presence, with finding that he was an 'arriving alien,' as would be required to sustain mandatory detention under section 1225.").

Third, petitioner's initial removal proceedings (commenced after his initial arrival) were terminated. *Del Valle Castillo*, 2025 WL 3524932, at *6 (finding this factor favors finding petitioner is detained under § 1226(a) noting the termination of removal proceedings where the government is aware of the noncitizen's presence without any

ORDER GRANTING PETITION FOR WRIT OF
HABEAS CORPUS IN PART - 10

form of parole under the INA demonstrates the have not been "seeking admission" in the time since); *id.* (citing 8 C.F.R. § 1239.2(e) ("When a notice to appear is canceled or proceedings are terminated under this section any outstanding warrant of arrest is canceled.")).

Finally, the Notice to Appear reflects that petitioner is charged only under § 1182(a)(6) as "present in the United States without being admitted or paroled" which supports the conclusion that he is detained under § 1226(a). Dkt. 8 (Collins Decl.) at Ex. I ("Notice to Appear"); *Del Valle Castillo*, 2025 WL 3524932, at *6; *Rodriguez Vazquez*, 2025 WL 2782499, at *17.

Accordingly, the Court concludes that petitioner is detained under § 1226(a) and upon his arrest he was entitled to a hearing.

A.    Due Process

The Due Process Clause of the Fifth Amendment prohibits the federal government from depriving any person of "life, liberty, or property, without due process of law[.]" The right to due process extends to "all 'persons' within the United States, including [non-citizens], whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001).

"Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment." *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976). "The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.' " *Id.* at 333 (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)).

ORDER GRANTING PETITION FOR WRIT OF
HABEAS CORPUS IN PART - 11

The Ninth Circuit in *Rodriguez Diaz v. Garland* assumed without deciding that the *Mathews* three-part test applies in "the immigration detention context." 53 F.4th 1189, 1206–07 (9th Cir. 2022). And district courts have since applied the *Mathews* test in similar circumstances. *See E.A. T.-B. v. Wamsley*, 795 F. Supp. 3d 1316, 1320–21 (W.D. Wash. 2025).

        1)      Private Interest

Under the first *Mathews* factor, the Court determines the private interest that will be affected by the official action. Petitioner's interest in not being detained is "the most elemental of liberty interests[.]" *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004).

The Government argues that they were entitled to commence new removal proceedings against petitioner based on his new criminal charge and to detain him without any additional notice or process and, he is not entitled to a bond hearing because he is mandatorily detained under § 1225(b). Dkt. 7.

"Freedom from bodily restraint has always been at the core of the liberty protected by the Due Process Clause from arbitrary governmental action." *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992); *see also Zadvydas*, 533 U.S. at 696 (finding that a non-citizen has a liberty interest "strong enough" to challenge "indefinite and potentially permanent" immigration detention). And "individuals who have been released from custody, even where such release is conditional, have a liberty interest in their continued liberty." *Doe v. Becerra*, 787 F. Supp. 3d 1083, 1093, No. 2:25-cv-00647-DJC-DMC, (E.D. Cal. Mar. 3, 2025); *Hernandez v. Sessions*, 872 F.3d 976, 981 (9th Cir. 2017) ("While the temporary detention of non-citizens may sometimes be justified by concerns about public safety or flight risk, the government's discretion to incarcerate

ORDER GRANTING PETITION FOR WRIT OF
HABEAS CORPUS IN PART - 12

non-citizens is always constrained by the requirements of due process[.]”); *E.A. T.-B.*, 795 F. Supp. 3d at 1320–21.

The Supreme Court “usually has held that the Constitution requires some kind of a hearing *before* the State deprives a person of liberty or property.” *See Zinermon v. Burch*, 494 U.S. 113, 127 (1990) (emphasis in original). Yet the Court also recognized that there may be situations that urgently require arrest, in which a prompt post-deprivation hearing is appropriate. *Martinez Hernandez v. Andrews*, No. 1:25-CV-01035 JLT HBK, 2025 WL 2495767, at *11 (E.D. Cal. Aug. 28, 2025) (citing *Zinermon*, 494 U.S. at 128 (noting there may be “special case[s]” where a pre-deprivation hearing is impracticable); *Guillermo M. R. v. Kaiser*, No. 25-CV-05436-RFL, 2025 WL 1983677, at *9 (N.D. Cal. July 17, 2025) (“absent evidence of urgent concerns, a *pre*-deprivation hearing is required to satisfy due process, particularly where an individual has been released on bond by an IJ”).

Courts have also held that where a noncitizen is released after an evaluation of their dangerousness and flight risk, their re-arrest and re-detention generally requires a showing of a material change in circumstance. *See, e.g., dos Santos v. Noem*, No. 1:25-CV-12052-JEK, 2025 WL 2370988, at *9 (D. Mass. Aug. 14, 2025) (granting habeas relief and immediate release where Government presented no evidence that “a change in circumstances” supported its decision to revoke the IJ’s bond order); *Saravia v. Sessions*, 280 F. Supp. 3d 1168, 1197 (N.D. Cal. 2017) (citing *Sugay* and noting government counsel's representation that “DHS has incorporated [*Sugay*’s] holding into its practice, requiring a showing of changed circumstances both where the prior bond determination was made by an immigration judge and where the previous release

ORDER GRANTING PETITION FOR WRIT OF
HABEAS CORPUS IN PART - 13

decision was made by a DHS officer"), *aff'd sub nom. Saravia for A.H. v. Sessions*, 905 F.3d 1137 (9th Cir. 2018).

The fundamental requirement of due process is the opportunity to be heard "at a meaningful time and in a meaningful manner," which requires an analysis of the meaningful time to hold a hearing. *Mathews*, 424 U.S 319 at 333 (quoting *Armstrong*, 380 U.S. at 552). On the facts of this case, the Court must determine whether a pre-deprivation hearing is required, or whether respondents may conduct a hearing after an individual in petitioner's situation is initially arrested and detained by ICE, and the timing and nature of such a hearing. *See generally, Cnty. of Riverside v. McLaughlin,* 500 U.S. 44, 55-56 (1991) (under the Fourth Amendment, a person arrested without a warrant must be brought before a neutral magistrate within 48 hours of arrest (or less, if the person can prove the probable cause determination was delayed unreasonably));[2] *see also Morrissey v. Brewer*, 408 U.S. 471 (1972) (probable cause hearing required after arrest for parole violation, and revocation hearing must take place within a reasonable time); *Martinez Hernandez v. Andrews*, No. 1:25-CV-01035 JLT HBK, 2025 WL 2495767, at *12 (E.D. Cal. Aug. 28, 2025) (holding that petitioner's ATD records indicated numerous violations and ordering a post-deprivation bond hearing within 10 days of court order); *Donahue v. Rhode Island Dept. of Mental Health,* 632 F. Supp. 1456, 1463 (D. R.I. 1986) (In considering a due process challenge to Rhode Island's

---

[2] The petitioner has not raised a Fourth Amendment issue; the Court therefore is not independently analyzing the arrest and detention under the Fourth Amendment. Yet the liberty interests of a person arrested under an immigration detainer or warrant, analyzed under the Fifth Amendment due process factors of *Matthews*, are similar to the liberty interests recognized in *Gerstein v. Pugh,* 420 U.S. 103 (1975). *See Kakkar v. Chestnut,* 1:25-CV-1627 JLT SAB, 2025 WL 3638298 (E.D. Cal. Dec. 15, 2025) (person recently released from prison would not have the same weighty significant private interest under *Mathews* as a person who had been successfully compliant with conditional release for a lengthy period before re-arrest on immigration matter).

ORDER GRANTING PETITION FOR WRIT OF
HABEAS CORPUS IN PART - 14

involuntary civil commitment statute that required a post-deprivation hearing within 10 days after a person was arrested for being an alcoholic the Court concluded that "[i]t is settled that the hearing which determines the constitutionality of the confinement need not take place before the deprivation occurs."); *Luna v. Van Zandt*, 554 F. Supp. 68, 72 (S.D. Tex. 1982) (holding due process required a probable cause hearing within seventy-two hours of deprivation).

Here, on September 27, 2019, petitioner was released on his own recognizance to his brother. Dkt. 8 (Collins Decl.) Exh. D (ORR release); Dkt. 9 (Hubbard Decl.) at 2. His release in 2019 necessarily required a consideration of his risk of flight and dangerousness. *See* 8 U.S.C. § 1232[3]; 6 U.S.C. § 279(a)(2)[4]. Removal proceedings

---

[3] 8 U.S.C. § 1232(b)(1) provides:

**Care and custody of unaccompanied alien children.**
Consistent with section 279 of Title 6, and except as otherwise provided under subsection (a), the care and custody of all unaccompanied alien children, including responsibility for their detention, where appropriate, shall be the responsibility of the Secretary of Health and Human Services.

8 U.S.C. § 1232(c)(2) provides:

**(A) Minors in Department of Health and Human Services Custody.**
Subject to section 279(b)(2) of Title 6, an unaccompanied alien child in the custody of the Secretary of Health and Human Services shall be promptly placed in the least restrictive setting that is in the best interest of the child. In making such placements, the Secretary may consider danger to self, danger to the community, and risk of flight.

[4] 6 U.S.C. § 279(a)(2) provides:

**Coordination with other entities; no release on own recognizance.**
In making determinations described in paragraph (1)(C) [determining placement of unaccompanied noncitizen children], the Director of the Office of Refugee Resettlement--
(A) shall consult with appropriate juvenile justice professionals, the Director of the Bureau of Citizenship and Immigration Services, and the Assistant Secretary of the Bureau of Border Security to ensure that such determinations ensure that unaccompanied alien children described in such subparagraph--
(i) are likely to appear for all hearings or proceedings in which they are involved;
(ii) are protected from smugglers, traffickers, or others who might seek to victimize or otherwise engage them in criminal, harmful, or exploitive activity; and
(iii) are placed in a setting in which they are not likely to pose a danger to themselves or others; and

ORDER GRANTING PETITION FOR WRIT OF
HABEAS CORPUS IN PART - 15

against petitioner were later terminated on the grounds that petitioner was "eligible to pursue relief before the [U.S.C.I.S.]" Dkt. 8 at Ex. F.

Petitioner was then granted SIJS and deferred action status. These factors support finding a strong private interest in freedom from imprisonment. *See Inlago Tocagon v. Moniz*, 802 F. Supp. 3d 93, 100–01 (D. Mass. 2025) (petitioner's "private interest in 'freedom from imprisonment' is strong, given his I-360 [SIJS] petition was granted … with a grant of deferred action for four years."); *Bermeo Sicha v. Bernal*, No. 25-cv-00418, 2025 WL 2494530, at *5 (D. Me. Aug. 29, 2025) (quoting *Hernandez-Lara v. Lyons*, 10 F.4th 19, 28 (1st Cir. 2021)).

Moreover, the Supreme Court has described the grant of deferred action as meaning "no action will thereafter be taken to proceed against an apparently deportable alien, even on grounds normally regarded as aggravated." *Reno v. Am.-Arab Anti-Discrimination Comm. (AADC)*, 525 U.S. 471, 484 (1999) (quoting 6 C. Gordon, S. Mailman, & S. Yale–Loehr, Immigration Law, and Procedure § 72.03 [2][h] (1998)). "Opinions in the Ninth Circuit … have confirmed" in other contexts "that a grant of deferred action prevents its recipient's removal from the United States." *Gama v. Bondi*, No. 2:25-CV-01925-TL, 2025 WL 3559942, at *3 (W.D. Wash. Dec. 12, 2025); *see also Lee v. Holder*, 599 F.3d 973, 974–75 (9th Cir. 2010) (interim relief program providing deferred action to U-visa applicants prevented their removal from the United States); *see also Ariz. Dream Act Coal. v. Brewer*, 855 F.3d 957, 958 (9th Cir. 2017) (Kozinksi, J., dissenting) (explaining that while deferred action does not grant legal status, it is the

---

(B) shall not release such children upon their own recognizance.

ORDER GRANTING PETITION FOR WRIT OF
HABEAS CORPUS IN PART - 16

Government's "commitment not to deport"); *Alvarez Leal v. Lynch*, 673 F. App'x 630, 632 (9th Cir. 2017) (Pregerson, J., dissenting) ("For decades, the federal government's mechanism for exercising prosecutorial discretion in the context of immigration enforcement has been deferred action, the formal determination not to remove a particular individual."); *Ayala v. Bondi*, No. C25-01063, 2025 WL 2209708, at *3, 5 (W.D. Wash. Aug. 4, 2025) (finding that a grant of deferred action prevents removal and ordering detained petitioner to be released); *B.D.A.A. v. Bostock*, No. C25-2062, 2025 WL 3484912, at *6 (D. Or. Dec. 4, 2025) (finding that "deferred action is an immigration benefit that prevents removal") (quoting *Ayala*, 2025 WL 2209708, at *3).

But even though several Courts have concluded that a petitioner cannot be removed or detained for purposes of executing a final order of removal while they have deferred action status, those cases did not involve changed circumstances presented here – where petitioner is involved in a criminal case, arrest, and charges for assault.

The record here reflects, and petitioner does not dispute, that he was arrested and charged with the offense of assault and battery on a family or household member, and that these charges are still pending. Respondents assert that because petitioner incurred a new criminal charge, on March 4, 2025, ICE located and arrested petitioner based on a new arrest warrant issued by a deportation officer on the grounds that there was probable cause to believe that petitioner was removable from the United States. The record reflects petitioner was stopped and taken into custody as he was driving away from a court appearance in his criminal case and that on the same day ERO served petitioner with a new NTA, charging petitioner with removability under INA §

ORDER GRANTING PETITION FOR WRIT OF
HABEAS CORPUS IN PART - 17

212(a)(6)(A)(i) (codified at 8 U.S.C. § 1182(a)(6)(A)(i)), on the grounds that he entered the United States without being admitted or paroled.

Given petitioner's prior release, the termination of his prior removal proceedings, and his grant of SIJS and deferred action status, the Court finds that petitioner has been deprived of an established interest in his liberty. *See E.A. T.-B.*, 795 F. Supp. 3d at 1320–21 ("Petitioner was arrested in public, detained and transferred to a facility in a different state, and remains in custody today undoubtedly deprives him of an established interest in his liberty."); *B.D.A.A. v. Bostock*. Therefore, the first *Mathews* factor weighs in petitioner's favor, but the individual interest is not as strong as it would be for an individual without any showing of material changed circumstance, in particular as may be relevant to the assessment of dangerousness or flight risk.

Here, there is an undisputed showing of changed circumstances as petitioner has been rearrested based on pending criminal charges involving assault against a family or household member.

2)      Risk of Erroneous Deprivation

The second *Mathews* factor considers whether a particular process results in a risk of erroneous deprivation of a protected interest and the probable value, if any, of additional or substitute procedural safeguards.

Here, the Government contends that petitioner was properly detained and placed in removal proceedings again based on his new arrest for assault and battery on a family or household member and that he is not entitled to a bond hearing or any additional process as he is mandatorily detained under § 1225(b).

ORDER GRANTING PETITION FOR WRIT OF
HABEAS CORPUS IN PART - 18

As discussed above, the fact that petitioner was initially released on his own recognizance, was granted SIJS and deferred action status, strengthens his liberty interest. The risk of erroneous deprivation of petitioner's liberty interest in the absence of any hearing is high. But petitioner's arrest and pending charges for a crime involving assault and battery constitutes a change in material circumstance from the circumstances of petitioner's initial release and termination of his original removal proceedings and, given the nature of the crime, could reasonably be seen as presenting an urgency requiring arrest and detention before a hearing. Under these circumstances, the Court finds a prompt post-deprivation hearing would be consistent with due process.

       3)    Government's Interest

Under the final *Mathews* factors, the Court considers the Government's interest in arresting and detaining petitioner without a hearing.

The government has an obvious interest "in protecting the public from dangerous criminal [noncitizens].'" *Rodriguez Diaz*, 53 F.4th at 1208 (quoting *Denmore v. Kim*, 538 U.S. 510, 515). Yet even when the government conducts a warrantless arrest for criminal charges, an individual is entitled to notice of the criminal charges at an initial appearance within 48 hours of being arrested, and the government must provide a detention or release hearing before the individual is committed for pretrial detention. *See Cnty. of Riverside v. McLaughlin,* 500 U.S. 44, 55-56 (1991); *Gerstein v. Pugh*, 420 U.S. at 112 (a determination of probable cause must be decided by a neutral and detached magistrate as soon as possible after a warrantless arrest); 18 U.S.C. § 3142; *see also, Gonzalez v. United States Immigration and Customs Enforcement,* 975 F.3d at 823-826.

ORDER GRANTING PETITION FOR WRIT OF
HABEAS CORPUS IN PART - 19

"[T]he government clearly has a strong interest in preventing [noncitizens] from 'remain[ing] in the United States in violation of our law.'" *Rodriguez Diaz*, 53 F.4th at 1208 (quoting *Denmore,* 538 U.S. at 518). "The Supreme Court has instructed that in a *Mathews* analysis, we 'must weigh heavily in the balance that control over matters of immigration is a sovereign prerogative, largely within the control of the executive and the legislature.'" *Id*. (quoting *Landon v. Plasencia*, 459 U.S. 21, 34 (1982)).

Providing a hearing before an immigration judge would require the government to bear the administrative costs of due process, but those costs are minimal when weighed against the severe deprivation of liberty at stake. The Government's interest in bypassing basic procedural protections is low. *See Ortega v. Bonnar*, 415 F. Supp. 3d 963, 970 (N.D. Cal. 2019) ("If the government wishes to re-arrest [petitioner] at any point, it has the power to take steps toward doing so; but its interest in doing so *without a hearing* is low.") (emphasis added). Although it would require the expenditure of resources to provide petitioner a post-deprivation hearing -- held by an immigration judge within a reasonable time after detention, those costs are far outweighed by the risk of erroneous deprivation of the liberty interest at issue.

Because the Government has failed to demonstrate a substantial interest in providing little or no due process protections, the administrative burden of providing a timely post-deprivation hearing is outweighed by the serious risk of erroneous deprivation, and the petitioner has a strong interest in continued liberty after previously being released and granted SIJS and deferred action status. The third *Mathews* factor weighs in petitioner's favor of having a prompt hearing addressing the basis for his redetention and any impact on the assessment of dangerousness and risk of flight, and

ORDER GRANTING PETITION FOR WRIT OF
HABEAS CORPUS IN PART - 20

the impact of petitioner's SIJS and deferred action status on the re-commencement of removal proceedings.

Based on this review of the *Mathews* factors, the Court finds that petitioner is entitled to a post-deprivation hearing where the grounds for his detention, petitioner's SIJS and deferred action status, and the material change in circumstance (petitioner's pending criminal charges) are considered as well as petitioner's flight risk and risk of dangerousness.

In this case, the IJ has conducted a bond hearing and denied bond because the IJ held that mandatory detention was required under 1225(b). The IJ made an alternative finding that, to the extent the IJ had jurisdiction, that petitioner was a flight risk but should be released on a bond of $4,000. The record here shows that the IJ considered petitioner's SIJS and deferred action status and his pending criminal charge for assault in the context of evaluating his dangerousness and risk of flight at the bond hearing. The record does not show whether an IJ has directly considered the impact of petitioner's SIJS and deferred action status on the recommencement of removal proceedings against petitioner. Because the record shows petitioner did not receive a hearing with the appropriate procedures required by the Fifth Amendment, the Court orders a post-deprivation hearing.

B.    Request for Permanent Injunctive Relief

Petitioner also seeks an order enjoining respondents from re-detaining petitioner absent written notice and a pre-deprivation hearing at which DHS must justify any re-detention by clear and convincing evidence of flight risk or danger to the community and establish that no alternatives to detention would mitigate any such risks. The Court

ORDER GRANTING PETITION FOR WRIT OF
HABEAS CORPUS IN PART - 21

denies without prejudice petitioner's request for a permanent injunction prohibiting his re-detention during his removal proceedings absent written notice and a hearing. Petitioner has not argued the requirements of *Winter v. Natural Resources Defense Council Inc.*, 555 U.S. 7 (2000).

### III.    CONCLUSION

The Court GRANTS the petition for writ of habeas corpus IN PART and ORDERS:

(1) The Court finds that petitioner is detained under 8 U.S.C. § 1226(a) and is not subject to mandatory detention under 8 U.S.C. § 1225(b)(2). The Court ORDERS the respondents to provide petitioner a hearing in which the Government bears the burden of proof, under *Tijani v. Willis*, 430 F.3d 1241, 1242 (9th Cir. 2005), abrogated on other grounds in *Jennings v. Rodriguez,* 583 U.S. 281, 286 (2018), to justify immigration re-detention by clear and convincing evidence. *Singh v. Holder,* 638 F.3d 1196, 1203-1204 (9th Cir. 2011), abrogated on other grounds in *Rodriguez Diaz v. Garland,* 53 F.4th 1189, 1211-1214 (9th Cir. 2022); *see also, Foucha v. Louisiana,* 504 U.S. 71, 80 (1992) (the government must bear the burden of proof for civil commitment by clear and convincing evidence); *Woodby v. Immigration and Naturalization Service,* 385 U.S. 276, 285 (1966) ("This Court has not closed its eyes to the drastic deprivations that may follow when a resident of this country is compelled by our government to forsake all bonds formed here and go to a foreign land where he often has no contemporary identification."). The government must provide adequate notice and due process protections similar to hearings under *Morrissey v. Brewer,* 408 U.S. 471 (1972)

within 10 calendar days after this Order is filed. The hearing shall be conducted by an immigration judge to determine

(2) If petitioner is released, respondents must return to petitioner any personal property, including personal identification documents and employment authorization documents

(3) Petitioner's request for an injunction enjoining respondents from re-detaining petitioner absent written notice and a pre-deprivation hearing at which DHS must justify any re-detention by clear and convincing evidence of flight risk or danger to the community and demonstrate that no alternatives to detention would mitigate any such risks is DENIED without prejudice.

(4) The parties are directed to file a joint status report on or before March 2, 2026, indicating whether there has been a hearing held before an IJ as ordered above, and whether petitioner has been released.

(5) The Court will entertain any post-judgment motion for attorney's fees, as requested in the petition.

Dated this 17th day of February, 2026.

*Theresa L. Fricke*

Theresa L. Fricke
United States Magistrate Judge

ORDER GRANTING PETITION FOR WRIT OF
HABEAS CORPUS IN PART - 23